ZIMMERMAN REED, LLP
CHRISTOPHER P. RIDOUT (SBN 143931)
 Email: christopher.ridout@zimmreed.com
HANNAH P. BELKNAP (SBN 294155)
 Email: hannah.belknap@zimmreed.com
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
(877) 500-8780 Telephone
(877) 500-8781 Facsimile

BOUCHER LLP
RAYMOND P. BOUCHER (SBN 115364)
 Email: ray@boucher.la
SHEHNAZ M. BHUJWALA (SBN 223484)
 Email: bhujwala@boucher.la
21600 Oxnard Street, Suite 600
Woodland Hills, CA 91367
(818) 340-5400 Telephone
(818) 340-5401 Facsimile

*Additional attorneys listed on signature page*

*Attorneys for Plaintiffs and all others
similarly situated*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BERKE and WOLFGANG COSTELLO, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC, a Wisconsin limited liability company, HARLEY-DAVIDSON MOTOR COMPANY, INC., a Wisconsin corporation, and DOES 1-10, inclusive,<br><br>        Defendants. | CASE NO.: 2:16-CV-08939<br><br>**COMPLAINT**<br>**(CLASS ACTION)**<br><br>1. Violation of the Unfair Competition Law – "Unfair" Prong (Cal. Bus. & Prof. Code § 17200 *et seq.*)<br>2. Violation of the Unfair Competition Law – "Fraudulent" Prong (Cal. Bus. & Prof. Code § 17200 *et seq.*)<br>3. Violation of the Unfair Competition Law – "Unlawful" Prong (Cal. Bus. & Prof. Code § 17200 *et seq.*)<br>4. Violation of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*)<br><br>(Jury Trial Demanded) |

COMPLAINT

This is a case about companies placing profit above human safety and product utility. Plaintiffs Michael Berke ("Plaintiff Berke") and Wolfgang Costello ("Plaintiff Costello") (collectively, "Plaintiffs") bring this Class Action Complaint ("Complaint") against Defendants Harley-Davidson Motor Company Group, LLC and Harley-Davidson Motor Company, Inc. (collectively, "Defendants" or "Harley-Davidson") individually and on behalf of all others similarly situated and allege, on personal knowledge as to their own actions and their counsel's investigations, and on information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1. To owners and non-owners alike, Harley-Davidson is a household name commonly associated with motorcycles. Harley-Davidson markets itself as a company "with both global significance and local relevance... rank[ing] as one of the strongest brands in the world."[1] Taking advantage of this brand notoriety, Harley-Davidson's "manufacturer's suggested retail price for its motorcycles is generally higher than its competitors."[2]

2. Unfortunately, for consumers, including Plaintiffs, ownership of a Harley-Davidson motorcycle ("Harley") with certain engines comes at an even higher financial cost: inability to use the Harley as expected, resulting in lost value, and additional expenses incurred because of premature wear to component parts.

3. Since at least 2006, Defendants have designed, manufactured, sold, or otherwise placed into the stream of commerce the Twin Cam 103 engine[3] (the "Engine" or "Twin Cam 103") for use in Harley-Davidson motorcycles. All Twin

---

[1] Harley-Davidson Company Overview, http://investor.harley-davidson.com/phoenix.zhtml?c=87981&p=irol-homeprofile&locale=en_US&bmLocale=en_US (last accessed Nov. 21, 2016).

[2] Harley-Davidson, Inc., Annual Report (Form 10-K) at 4 (Feb. 18, 2016), *available at* http://investor.harley-davidson.com/phoenix.zhtml?c=87981&p=irol-reportsannual ("2015 Form 10-K").

[3] The Twin Cam 103 engine defined here is distinct from the Twin-Cooled High Output Twin Cam 103 discussed herein, which will be defined separately.

COMPLAINT                                                                          1

Cam 103 engines have a common design defect that creates a substantial risk of injury caused by excessive heat when the Engines are used as designed and for their intended purpose during their expected usable life. The Twin Cam 103s have caused or contributed to numerous burn injuries to consumers.

4. Prior to and at the time of sale or lease, Harley-Davidson does not market or advertise, and fails to disclose, that certain of its engines are defectively designed. Specifically, the Twin Cam 103 engine  is designed in a manner that allows it to emit unreasonably high heat, resulting not only in material safety risks to owners and riders, but in premature wear of the engine's component parts (the "Engine Defect", defined more thoroughly below).

5. The Engine Defect, in existence at the time of purchase of a Harley-Davidson motorcycle with a Twin Cam 103 engine (the "Motorcycle(s)"), is a material safety risk, as, in addition to creating a distraction while riding, it can cause riders to suffer burns to their bodies while using the Motorcycles in their anticipated manner. Because the Engine becomes so hot, many of its components are damaged and wear more quickly than they should, requiring replacement at significant cost, even if burn injuries do not result.

6. Material facts possessed by Defendants regarding the Engine Defect and risks were not disclosed to consumers, including Plaintiffs, in the proposed Class prior to the time they purchased their Motorcycles, but instead, were actively concealed.

7. Defendants have actual knowledge of the Engine Defect and, on information and belief, maintain records of incidents of human injuries and complaints arising from use of their Motorcycles. The inherent defects, frequency of injuries, and Defendants' suppression of facts pertaining thereto, occur statewide.

8. At all times relevant, Defendants had actual knowledge of the Engine Defect and thus, affirmative duties to disclose such risks about their dangerously defective products to consumers in the Class. However, Defendants have failed to eliminate the Engine Defect or provide consumers with adequate warnings or

instructions.  By failing to do so, Defendants violated their legal duties and caused financial injury and loss to members of the Class, while also exposing them to potential serious personal injury.  As no reasonable consumer would knowingly purchase such a product, Class members have been injured in a common way by Defendants' conduct. Class members did not receive the benefit of their bargain (a defect-free product) and must purchase a replacement or other parts at additional costs to be safe.

9.     Defendants' actual knowledge is evidenced by numerous customer complaints and Defendants' own alternative engine designs that do not cause similar harms.   Rather than cure the known design defect contained in the Twin Cam 103 engines, Harley-Davidson instead sought to conceal the dangers inherent in the Engine's design.  Despite notice of the Engine Defect, Harley-Davidson has not recalled, in relation to the Engine Defect, motorcycles with the Twin Cam 103, has not offered a suitable repair or replacement free of charge to Plaintiffs and other current or former owners or lessees of the Motorcycles ("Class members") during the Class Period (defined below), and has not otherwise disclosed the existence of the Engine Defect.

10.    Material facts regarding the Engine Defect were never disclosed to Plaintiffs and other Class members and continue to be concealed by Defendants. Defendants' ongoing concealment and omission of such facts, when they had a continuing duty to disclose such facts to consumers, was misleading and deceptive.  It was reasonably foreseeable to Defendants that their conduct and failure to act and warn the Class members, in light of the information they actually or should have possessed, would expose Plaintiffs and other Class members to unreasonable risks of injury and loss and cause Plaintiffs and members of the Class damage, injury, and loss.

11.    Defendants' actions and concealment of material facts injured and harmed consumers in the Class by inducing them to unknowingly purchase or retain motorcycles with engines that contain common and inherent dangers and Engine Defect.  The Engine continues to carry an inherent risk of causing burns, of which

Defendants are aware.  Given their exclusive and superior knowledge of the Engine's defects and inherent risk of the danger involved in its continued use, Defendants had an ongoing duty to disclose such facts to members of the Class.  Defendants provided no notice of the inherent and potential risks of use of its product to consumers at the time of sale or acquisition, but rather concealed those risks through omissions of material fact while implying in marketing, sales, and operational materials that the Engines were safe and defect-free.  By and through such conduct, Defendants breached the duties of care that they owed to Plaintiffs and the Class members, including the duty to warn them of dangerous Engine Defect.

12.    Absent Defendants' material omissions, reasonable consumers, including Plaintiffs and other Class members, would not have purchased motorcycles with the Twin Cam 103 engine, would have purchased a motorcycle from a competitor, or would have paid less for the Harley with the Twin Cam 103 engine.

13.    As a result of Defendants' material omissions, Plaintiffs and other members of the Class have suffered economic harm.

14.    Among other appropriate relief, Plaintiffs seek to have Defendants (1) repair or replace the defective and dangerous Engines distributed to the Class members and (2) compensate Class members for the cost of the Engines so they may purchase a non-defective one.  This case does not seek recovery for personal injuries on a class-wide or individual basis.

## PARTIES

15.    Plaintiff Michael Berke is a resident of Los Angeles County, California.  Plaintiff Berke purchased a 2015 Harley-Davidson Road Glide Special motorcycle with a Twin Cam 103 engine for approximately $25,907.15 from the Antelope Valley Harley-Davidson dealership in Lancaster, California in September 2015.  Plaintiff Berke owned his Motorcycle during the Class Period and is a member of the Class.

16.    Plaintiff Wolfgang Costello is a resident of Los Angeles County, California.   Plaintiff Costello purchased a 2013 Harley-Davidson Road Glide

motorcycle with a Twin Cam 103 engine for approximately $26,380.29 from the Old Road Harley-Davidson dealership in Santa Clarita, California in May 2013.  Plaintiff Costello owned his Motorcycle during the Class Period and is a member of the Class.

17.   Defendants' wrongful conduct, as described herein, has caused and will continue to cause Plaintiffs and all Class members injury in fact that is common to Plaintiffs and all Class members. Among other things, as a result of Defendants' conduct described herein, Plaintiffs and all Class members lost the benefit of their bargain as they unknowingly paid for a motorcycle with a defective Twin Cam 103 engine, the motorcycles with Twin Cam 103 engines have suffered a loss of usefulness, and Plaintiffs and all Class members are (or have been) exposed to further costs and expenses to replace or attempt to make safe said motorcycles.  As such, Plaintiffs have lost money or property as a result of Defendants' conduct.   The amount of said common injury and damage will be proven at trial according to proof.

18.   Defendant Harley-Davidson Motor Company Group, LLC ("Harley-Davidson LLC") is a Wisconsin limited liability company with its principal place of business located at 3700 W Juneau Ave., Milwaukee, Wisconsin 53208.   On information and belief, Defendant Harley-Davidson LLC does not have a registered agent for service of process in California.  Defendant Harley-Davidson LLC's agent for service of process in Wisconsin is CT Corporation System, located at 8020 Excelsior Dr. Ste. 200, Madison, Wisconsin 53717.  Defendant Harley-Davidson LLC designs and manufactures Harley-Davidson motorcycles that are advertised and sold in California.   Harley-Davidson, Inc., a publically traded Wisconsin corporation (NASDAQ HOG) is a holding company and the parent company of Defendant Harley-Davidson LLC.  Harley-Davidson, Inc. is not named as a defendant in this Complaint at this time.

19.   Defendant Harley-Davidson Motor Company, Inc. ("Harley-Davidson Motor, Inc.") is a Wisconsin corporation with its principal place of business located at 3700 W Juneau Ave., Milwaukee, Wisconsin 53208.   On information and belief,

Defendant Harley-Davidson Motor, Inc. does not have a registered agent for service of process in California.  Defendant Harley-Davidson Motor, Inc.'s agent for service of process in Wisconsin is CT Corporation System, located at 8020 Excelsior Dr. Ste. 200, Madison, Wisconsin 53717.  Defendant Harley-Davidson Motor, Inc. is a subsidiary of Defendant Harley-Davidson, LLC and is involved in advertising of Harley-Davidson motorcycles.[4]

20.   Plaintiffs do not know the true names and capacities of the defendants sued herein as Does 1 through 10 ("Doe Defendants"), inclusive, and therefore sues said Doe Defendants by fictitious names.  Plaintiffs are informed and believe and based thereon allege that each of the Doe Defendants is contractually, strictly, negligently, intentionally, vicariously liable and/or otherwise legally responsible in some manner for the acts and omissions described herein.  Plaintiffs will amend this Complaint to set forth the true names and capacities of each Doe Defendant when the same are ascertained.

21.   Plaintiffs are informed and believe and based thereon allege that Defendants and Doe Defendants 1 through 10, inclusive, and each of them, are and at all material times have been, the agents, servants or employees of each other, purporting to act within the scope of said agency, service or employment in performing the acts and omitting to act as alleged herein.  Each of the Defendants named herein are believed to, and are alleged to, have been acting in concert with, as employee, agent, co-conspirator or member of a joint venture of, each of the other Defendants, and are therefore alleged to be jointly and severally liable for the claims set forth herein, except as otherwise alleged.

---

[4] Unless otherwise specified, "Defendants" and "Harley-Davidson" refers to Defendant Harley-Davidson Motor, Inc. and Defendant Harley-Davidson, LLC in their respective capacities, as Plaintiff is unable at this time to determine what role Defendant Harley-Davidson Motor, Inc. plays in the marketing, sales, and advertising of the motorcycles with engines covered by this Complaint.  Should it be necessary to differentiate between the Defendants, Plaintiff will amend the Complaint accordingly.

COMPLAINT                                                                 6

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one member of the Class is of diverse citizenship from Defendants, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5,000,000.

23.     This Court has personal jurisdiction over Defendants because Defendants conduct business in the State of California, a substantial portion of the wrongdoing alleged by Plaintiffs occurred in the State of California and this District, and Defendants have sufficient minimum contacts with or otherwise have purposefully availed themselves of the markets of the State of California and this District such that it is fair and just for Defendants to adjudicate this dispute in this District.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims occurred in this District and, as a corporation subject to personal jurisdiction in this District, Defendants conduct business in this District.

## FACTUAL ALLEGATIONS

**A.     Overview of Harley-Davidson**

25.     Harley-Davidson, Inc. has been the historical market share leader in the U.S. heavyweight motorcycle (601 cubic centimeters or greater ("601+cc") market.[5] "According to the Motorcycle Industry Council (MIC), the cruiser and touring categories accounted for approximately 76% of total 2015 601+cc retail unit registrations in the U.S.  During 2015, the 601+cc portion of the market represented approximately 85% of the total U.S. motorcycle market in terms of new units registered."[6]

26.     Harley-Davidson reported 168,240 retail unit sales in 2015 and 171,079

---

[5] *See* 2015 Form 10-K at 4.
[6] *Id.*

retail unit sales in 2014, with roughly two-thirds of those sales in the United States.[7]  In 2015, 70% of Harley-Davidson's revenue from its product lines was from its motorcycles.[8]  Simply put, Harley-Davidson relies heavily on sales of its motorcycles to U.S. consumers.

27.    While Harley-Davidson sells its motorcycles through its dealers, it works closely with its dealers, seeking "to provid[e] a trusted, personal and social experience for customers at every touchpoint."[9]  Harley-Davidson provides training and education to its dealers in the form of "intensive, in-store learning and best practices for providing great customer experiences."[10]  Harley-Davidson markets its products "to retail customers worldwide primarily through digital and experiential activities as well as through more traditional promotional and advertising activities...[and] dealers engage in a wide range of local marketing and experiential activities supported by cooperative programs with the Company."[11]

28.    Despite this strong and intentional marketing presence, Defendants fail to disclose, and on information and belief, knowingly and intentionally conceal from consumers that the engine present in many of its motorcycles is defectively designed, and that, as a result of the Engine Defect, consumers will not be able to use the Motorcycles as they reasonably intended when they made the purchase or, if they are able to use them at all, cannot do so without expending significant additional monies, a fact Defendants fail to disclose.

29.    Likewise, while Defendants have incurred great expenditures "for research activities relating to product development and improvement" (*see id.*[12]),

---

[7] *Id.*

[8] *See id.* at 3.

[9] http://ar.harley-davidson.com/2013/letter.php (last accessed Nov. 21, 2016).

[10] *Id.*

[11] 2015 Form 10-K at 6.

[12] "The Company incurred research and development expenses of $161.2 million, $138.3 million and $152.2 million during 2015, 2014 and 2013, respectively."  Form 10-K at 7.

COMPLAINT                                                                                                    8

Defendants fail to disclose that this research and product development was, on information and belief, a direct result of, or, at a minimum, based on their knowledge of the Engine Defect, as more fully described below.

30.     Although Harley-Davidson motorcycles sold in the United States are subject to certification by the U.S. Environmental Protection Agency ("EPA") and the California Air Resources Board ("CARB") for compliance with applicable emissions and noise standards (*id.* at 7), these regulations do not permit or excuse the Engine Defect.

**B.     Defendants' Defective Twin Cam 103 Engine**

31.     Harley-Davidson initially introduced its Twin Cam 103 engine as part of a "Power Pak" upgrade option.  For the 2012 model-year, the Twin Cam 103 was made standard on all Dyna, Softail and Touring models with the exception of the Dyna Street Bob and Dyna Super Glide Custom.[13]  The Twin Cam 103 Engine replaced the Twin Cam 96 as the standard engine for these models.[14]  The Twin Cam 96 replaced the Twin Cam 88, which was manufactured from 1999 to 2006.

32.     The Twin Cam 103, 96, and 88 are all "V-twin" designs, meaning one cylinder sits behind the other, creating the shape of the letter V when viewed from the side.

33.     The following image depicts a Twin Cam 103 Engine[15]:

---

[13] *See* http://www.harley-davidson.com/en_US/home/events/press-release/general/2011/news18.html (last accessed Nov. 21, 2016).
[14] *Id.*
[15] http://www.totalmotorcycle.com/motorcycles/2012models/2012-Harley-Davidson-TwinCam103VTwinEngine.htm (last accessed Nov. 21, 2016).



34.    Like the earlier Twin Cam engines, the Twin Cam 103 is "air-cooled." This means that the engine is, by design, cooled exclusively by the flow of air. Simply put, if there is no or little to no airflow, which is caused by moving the bike to allow air to flow over the engine's fins, the engine is not cooled.  As Harley-Davidson is aware, air-cooling as a method of keeping and maintaining a safe and efficient heat level has limited effectiveness.

35.    While heat is a byproduct of internal combustion engines, the primary motorcycle engine type, motorcycle manufacturers other than Harley-Davidson (at least until very recently and selectively, as stated infra), have designed engines and other parts of motorcycles in ways that either reduce the heat created by the engine or reduce the heat emanating out of the engine.  One such way is to utilize a liquid-cooling system.

36.   Most modern automobiles and motorcycles utilize a liquid-cooling system comprised of a radiator, water pump, and hoses that circulate a water and coolant mixture throughout the engine.  The heat from the engine is transferred to the coolant, and then the coolant is cooled in the radiator and sent back around through the hoses. Air-cooled engines have fins extending out from the engine to pull heat away, relying on motion to move cool air over the fins to keep the engine cool.  The placement of an engine's cylinders is also a component of the effectiveness of the air-cooling "system". Cylinders that oppose each other horizontally and have distance between them are better able to receive airflow.  Airflow is also restricted by motorcycle fairings and other obstructions.

37.   The Twin Cam 103 lacks a liquid-cooling system, relying solely on air to cool the engine.  On information and belief, the air-cooling system is an element of the Engine Defect.

38.   As Plaintiffs and other Class members who purchased or leased Harley-Davidson motorcycles with a Twin Cam 103 Engine (the "Motorcycle(s)") during the Class Period know, albeit only after using their Motorcycles, air cooling is insufficient to cool the Twin Cam 103 to a temperature at which it is reasonable to ride the Motorcycle without serious safety risks and at which component parts of the Engine are not prematurely worn or destroyed.

39.   Though the Twin Cam 103 was standard on various models during the Class Period, on information and belief, the chassis, exhaust placements, or fairing variations do not negate the Engine Defect.

40.   Alternative designs exist for the Twin Cam 103 itself and its cooling system.  Defendants' own engine releases confirm the existence of the alternatives to the Twin Cam 103 design.  Among other reasonable alternative designs, designs employing liquid-cooled cylinders exist and have long existed for motorcycle engines. Indeed, most of Defendants' competitors have used liquid-cooling or otherwise designed the engines to reduce the amount of heat produced.

41.     Likewise, Defendants have utilized a liquid-cooled design in their Revolution engine, which has been used exclusively in the V-Rod motorcycle starting with model year 2002.

42.     Defendants began utilizing alternative engine designs for other non-Revolution engines placed in their 2014 model-year products.

43.     One design, the Twin-Cooled, High Output Twin Cam 103, uses liquid-cooling, a higher flow airbox, and heat exchangers located in the left and right fairing, which Harley-Davidson dealers claim "puts less heat on the rider and passenger".[16]

44.     The recently debuted Milwaukee-Eight Big Twin engine utilized in certain 2017 motorcycles have been entirely redesigned so that the internal parts have been changed to produce less heat.  They still rely on airflow to cool the cylinders.

45.     Further, Defendants' design options were not limited to use of a liquid-cooling system.   While liquid-cooling removes excess heat to keep parts at safe temperatures, the engine could have been designed to take up less heat from combustion altogether.   Other designs could have prevented the heat from becoming so excessive that it causes burns and premature wear.

46.     On information and belief, Defendants were aware of these reasonable design alternatives, were aware that the majority of Defendants' competitors in fact employ such reasonable design alternatives, and that Defendants themselves have employed some of these reasonable design alternatives in some of their models, including V-Rod models beginning with the 2002 model year.

47.     Moreover, Defendants were not only aware of these reasonable design alternatives, but, on information and belief, were able to utilize these reasonable design alternatives long before they did.  Defendants did not disclose this information to

---

[16] *See, e.g.* http://yankeeharley.com/Trike-Harley-Davidson-Tri-Glide-174-Ultra-2016-c428f11e-aa25-4da1-8c3b-a4ff004d312dG (Yankee Harley Davidson dealership's website) (last visited Nov. 21, 2016); http://reelbrothershd.com/Motorcycles-Harley-Davidson-Ultra-Limited-Low-2016-116f7a2a-2d63-4aac-9d2a-a4ff004d3131 (Reel Brothers Harley-Davidson dealership's website (last visited Nov. 21, 2016).

Plaintiffs and other Class members.

48.   In failing to disclose to Plaintiffs and other Class members that the motorcycle he or she was considering purchasing, or did purchase, contained a defectively designed engine, Defendants violated California consumer protection statutes.

49.   Defendants are not excused from disclosing the Engine Defect by virtue of the known fact that internal combustion engines create heat.  While the creation of heat itself is unavoidable with an internal combustion engine, it was, as competitors and Defendants themselves have shown, avoidable for the Twin Cam 103 engine to create and emit heat excessive to the point it created a serious safety risk and caused premature wear and harm to the engine itself.

50.   Plaintiffs, as well as other Class members, suffered burns or were made susceptible to burns from the usual and reasonably expected use of their Motorcycles, which caused them to be unable to ride their Motorcycles.  Because of the heat, Plaintiffs, as well as other Class members, were unable to ride their Motorcycles and were at an increased risk of collision or otherwise disrupted or distracted driving.

51.   In addition to human physical ramifications, the Twin Cam 103's air-cooling system is unable to sufficiently cool the engine, both in stop and go traffic and while riding at higher, more consistent speeds and distances.  This leads to overheated oil, increased wear on engine parts, engine failure, and external temperatures on the motorcycle (especially the rear cylinder and the Motorcycle exhaust system) hot enough to cause severe burns to riders.

52.   Beginning with 2004 model year motorcycles in California and 2006 model year motorcycles nationwide, EPA emissions requirements and other regulations have required that motorcycles, including Harley-Davidson motorcycles, be manufactured with catalytic converters and other mechanisms designed to capture excess fuel in motorcycle exhaust and otherwise "scrub" the exhaust to reduce harmful

COMPLAINT                                                                                                13

emissions.[17]   In addition, Harley-Davidson motorcycles must be manufactured with compliant mufflers to reduce exhaust noise to below legal limits.  Catalytic converters and mufflers are legally required component parts that increase engine heat and Harley-Davidson has a duty to provide a properly designed cooling system capable of coping with this increased heat.

53.    Defendants have failed to design cooling systems to cope with the increased heat caused by emission and noise requirements.

**C.    Project Rushmore**

54.    Defendants' research and development evidences their knowledge of the Engine Defect. Project Rushmore is described by Harley-Davidson as a consumer research project, whereby Defendants spoke with thousands of riders and made engineering changes according to consumer feedback.  These "innovations" included the introduction of a liquid-cooled engine.

55.    "During 2013, [Harley-Davidson] introduced Project Rushmore[TM] ("Project Rushmore"), a completely new line of touring motorcycles."[18]  In its 2013 Annual Review, Harley-Davidson touted that its "game-changing Project RUSHMORE motorcycles" were one aspect of 2013's year of "milestones and momentum."[19]

56.    Foremost among the announcements of Project Rushmore was the first liquid-cooled engine outfitted on a Harley-Davidson touring bike, the Twin Cooled High Output Twin Cam 103 V-Twin.  According to Harley-Davidson, twin cooling (cooling by air and liquid) cools the heads around the exhaust ports to deliver at or near peak performance under all operation conditions and temperatures.  This is achieved via a small 1.1-quart liquid-cooling system that routes through the downtubes to

---

[17] *See* 13 Cal. Code Regs. tit. 13, § 1958; 40 CFR § 86.410-2006.

[18]  Harley Davidson, Annual Report (Form 10-K) at 24 (Feb. 20, 2014) *available at* http://investor.harley-davidson.com/phoenix.zhtml?c=87981&p=irol-reportsannual ("2013 Form 10-K").

[19] http://ar.harley-davidson.com/2013/letter.php (last accessed Nov. 21, 2016).

COMPLAINT                                                                                                  14

radiators housed in the lower fairing louvers. Claiming the system will make less engine heat in stop-and-go traffic, it also utilizes a higher flow airbox.

57.   Despite the introduction of its "Project Rushmore" motorcycles, Defendants have not taken steps to recall the Motorcycles with the Twin Cam 103 Engine Defect.  Instead, Defendants have introduced purportedly safer bikes and left Plaintiffs and other consumers in the Class to contend with products bearing a defective engine.

**D.     Harley-Davidson Has Known About the Engine Defect Since at Least 2006 and Therefore Has a Duty to Disclose It to Plaintiffs and the Class.**

58.   Defendants have a long history of manufacturing and studying motorcycle engines and are thus well versed in their properties, limits, and tolerances.

59.   Defendants knew or should have known of the Engine Defect prior to the sale and lease of the Motorcycles to Plaintiffs and the Class because they have conducted extensive research in this field of study and are privy to public and non-public consumer complaints regarding heat issues caused by the Engine Defect. Defendants are in a superior position to know that the Twin Cam 103 engines could cause burns and premature component part damage.

60.   Despite their knowledge of the Engine Defect, Defendants never disclosed it to Plaintiffs or the other members of the Class.

61.   Defendants have had exclusive knowledge of the Engine Defect since at least 2006.

62.   The Twin Cam 103 shares a substantially similar design to the Twin Cam 88 and 96 engines, about which, on information and belief, Defendants have received heat-related complaints.

63.   On information and belief, Defendants attempted to correct the heat issue that was also present in the earlier Twin Cam 88 and 96 engines by incorporating a software program that shut off the rear cylinder when the motorcycle is idling and were researching and developing a liquid-cooled engine long before they filed a patent in

COMPLAINT                                                                          15

2009.   However, Defendants never disclosed the basis for the software changes or research and development or recalled the Motorcycles with the Engine Defect.

64.     EPA and CARB regulations also required, in 2006 and 2004, respectively, that Defendants reduce emissions and sound emitted from their motorcycles.  These requirements required Defendants to make adjustments to include a catalytic converter, which creates additional heat.  On information and belief, as part of the process of redesigning the engine to meet these requirements, Defendants engaged in research, development, and testing that would have made them aware of the heat issues present in the Twin Cam 88 and 96, in use at that time.

65.     Although Defendants had emissions related research and development and test results, they retained a substantially similar design in the Twin Cam 103.

### National Highway Traffic Safety Administration Complaints

66.     Notwithstanding other evidence concerning Defendants' exclusive, internal knowledge of the Engine Defect, Defendants' awareness of the fact that the Twin Cam 103 engine in the Motorcycles is defective and prone to premature component part wear and potential serious safety risks is evidenced by the numerous complaints concerning the issue that have been made to the National Highway Traffic Safety Administration ("NHTSA").  On information and belief, Defendants monitored NHTSA databases as part of their ongoing obligation to identify potential defects in their motorcycles.

67.     However, even in the face of these complaints, Defendants fail to disclose the Engine Defect, and they continue to put owners and lessees of the Motorcycles at risk.

68.     The following are excerpts of Complaints publically available on the U.S. National Highway Traffic Safety Administration (NHTSA) website made by consumers with Twin Cam 103 engines, numerous of which confirm Defendants were made aware of the issues:

AT SLOW SPEED OR STOPPED THERE IS ETREME [SIC] HEAT COMING FROM THE RIGHT SIDE OF THE ENGINE. IT IS SO HOT IT FEELS LIKE MY LEG IS BEING BURNED. ACCORDING TO THE DEALER THE ONLY FIX IS TO REPLACE THE EXHAUST SYSTEM WITH A SYSTEM WITHOUT THE CATALYTIC CONVERTER. THIS AT A COST OF CLOSE TO $2,000 ON A VEHICLE ALREADY COSTING $30,000. THIS IS A SAFETY ISSUE. *JS

NHTSA Complaint ID Number: 10592290 (filed May 18, 2014).[20]

EXTREME HEAT COMING FROM EXHAUST SYSTEM WHICH RUNS VERY CLOSE TO MY RIGHT LEG. NOT TOO NOTICEABLE WHILE RIDING AT HIGHWAYS SPEEDS BUT WHEN IN TRAFFIC OR AT TRAFFIC LIGHTS IT BECOMES UNBEARABLE. WHEN I QUESTIONED THE DEALER ABOUT IT THEY SAID ITS NORMAL AND THIS IS THE WAY THEY RUN, BUT... I COULD DO SOMETHING ABOUT IT IF I SPEND OVER $2000.00 TO CHANGE OVER THE EXHAUST TO TAKE OUT THE CATALYTIC CONVERTERS. ITS OVER $30,000.00 FOR THIS BIKE WHY DO I HAVE TO SPEND MORE MONEY TO MAKE IT SAFE TO RIDE??? HARLEY DAVIDSON KNOWS THERE IS A PROBLEM BUT WONT FIX IT. I HAD A 2011 MODEL ALSO WITH THE SAME PROBLEM. *TR

NHTSA Complaint ID Number: 10544568 (filed Sep. 20, 2013).

I HAVE A 2013 HARLEY DAVIDSON SOFTAIL SLIM. FLS. RIGHT FROM DAY ONE THERE HAS BEEN EXTREME HEAT FROM THE MOTOR. ESPECIALLY FROM THE RIGHT SIDE WHERE MY OIL TANK IS. THE HEAT GETS SO HOT THAT IT HAS BURNED THE INSIDE IF MY THIGH. IF I SIT IN TRAFFIC FOR ANY AMOUNT OF TIME IT IS HARD FOR ME TO STAY ON MY BIKE DUE TO THE EXTREME HEAT UNDER MY RIGHT LEG. I HAVE CHANGED MY EXHAUST LIKE HARLEY RECOMMENDED, BUT IT DIDN'T HELP. I LOVE MY BIKE, BUT GETTING BURNS ON THE INSIDE OF MY THIGH SHOULD NOT BE A PART OF RIDING IT!

NHTSA Complaint ID Number: 10731149 (filed June 30, 2015).

TL* THE CONTACT OWNS A 2014 HARLEY DAVIDSON FLSTC. THE CONTACT STATED THAT THE MOTOR WOULD BECOME

---

[20] The full text and other identifying information for the NHTSA Complaints excerpted in this Complaint are available online at http://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues.

EXTREMELY HOT. THE DEALER DIAGNOSED THAT THE OIL TANK WAS TOO CLOSE TO THE SEAT AND AS A RESULT, AN AIR COOL FILTER AND SHIELD GUARD NEEDED TO BE INSTALLED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 300. ## VIN PASSED ## HARLEY DAVIDSON HERITAGE SOFTAIL CLASSIC 2014 ##

NHTSA Complaint ID Number: 10661964 (filed Dec. 3, 2014).

THIS BIKE HAS EXCESSIVE HEAT ISSUES IT IS ALMOST TO THE POINT THIS BIKE CANNOT BE RIDDEN. I HAVE BEEN TOLD TO TAKE CARE OF THIS PROBLEM I WOULD NEED TO INVEST NEARLY $2,000 MORE DOLLARS INTO THIS BIKE. I THINK THIS IS AN ONGOING ISSUE WITH HARLEY-DAVIDSON AND THEY REFUSE TO ACKNOWLEGE THE PROBLEM. *TR

NHTSA Complaint ID Number: 10452824 (filed Mar. 23, 2012).

TL* THE CONTACT OWNS A 2012 HARLEY DAVIDSON FLTRU. THE CONTACT STATED THAT THE EXHAUST WAS OVERHEATED AND THE ELECTRICAL WIRES WERE OVERHEATED AS WELL. THE MOTORCYCLE WAS NOT TAKEN TO THE DEALER. THE DEALER WAS NOTIFIED AND ADVISED THE CONTACT TO NOTIFY THE MANUFACTURER. THEY OFFERED NO ASSISTANCE. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND ALSO OFFERED NO ASSISTANCE. THE VIN WAS NOT AVAILABLE. THE FAILURE MILEAGE WAS 112,000 AND THE CURRENT MILEAGE WAS 140,000.

NHTSA Complaint ID Number: 10468846 (filed Aug. 1, 2012).

69.    Harley-Davidson, as a manufacturer of motorcycle products, is subject to the U.S. National Traffic and Motor Vehicle Safety Act, which is administered by the NHTSA.   As it states in its 2015 Form 10-K, Harley-Davidson "has certified to NHTSA that its motorcycle products comply fully with all applicable federal motor vehicle safety standards and related regulations."

70.    Although "[Harley-Davidson] has ... during the last three years... initiated 27 voluntary recalls related to Harley-Davidson motorcycles at a total cost of $58.1 million", it has not issued recalls based on the Engine Defect.

71.     While these NHTSA complaints describe only a few incidents of excessive, unreasonable heat and component failure resulting from the Engine Defect, considering the high temperatures produced by an internal combustion engine and the inability of the air-cooling system to reduce and control that heat, it is not only possible but extremely probable that thousands of unreported cases of excessive, unreasonably dangerous heat and component failures proximately caused by the Engine Defect have gone unreported or undiagnosed.

72.     Many purchasers and lessees of the Motorcycles have experienced problems directly associated with the Engine Defect.  On information and belief, purchasers and lessees have complained to Harley-Davidson dealerships, which have passed this information along to Defendants.

73.     Likewise, on information and belief, Defendants, as with all automobile and motorcycle manufacturers, collect service information from dealerships and consumers and track specific problems, such as overheating or other mechanical issues.

74.     That these, and other complaints found on internet forums, are publicly available does not relieve Defendants of their obligation to disclose the Engine Defect. Plaintiffs and other consumers in the Class were and are not required to review internet forums or search for information regarding a potential defect prior to purchase of a Motorcycle.

### Safety Concerns

75.     As stated herein and illustrated by NHTSA complaints, in connection with their failure to disclose that the Engine Defect causes premature wear of component parts, Defendants also risk the safety of riders of the Motorcycles.  When the Twin Cam 103 engine is utilized in its intended manner, riders can experience severe heat, which potentially causes burns to riders' legs and other body parts in the proximity of the Twin Cam 103 engine.  As a result, riders, like Plaintiffs, are unable to continue riding and are at an increased risk of collision or otherwise disrupted or distracted driving.  The reasonable expectation that the Motorcycles are safe to ride was, and is,

material to Plaintiffs and members of the Class.

**E.     Defendants Failed to Disclose the Engine Defect to Plaintiffs and the Class**

76.     Defendants failed to disclose to Plaintiffs and Class members prior to purchase or lease that the Engine Defect would result in excessive, unreasonable heat and premature engine wear.

77.     Plaintiffs are informed and believe that Defendants knew or should have known that the Engines are defective and not fit for their intended purpose of providing consumers with safe and reliable transportation.   Nevertheless, Defendants have actively concealed and failed to disclose—and continue to conceal and fail to disclose—the Engine Defect from their customers prior to, at the time of purchase or lease and thereafter.

78.     Defendants knew of and concealed the Engine Defect that is present in every Motorcycle, from Plaintiffs and Class members, at the time of sale, lease and repair and thereafter.

79.     Defendants also had superior and exclusive knowledge of the Engine Defect and knew or should have known that the Engine Defect was not reasonably known or reasonably discoverable by Plaintiffs and Class members before they purchased or leased the Motorcycles.

80.     Plaintiffs are informed and believe that before Plaintiffs and other Class members purchased or leased their Motorcycles, Defendants knew about the Engine Defect through sources not available to consumers, including pre-release testing data, early consumer complaints about the Engine Defect to Defendants and Defendants' dealers, testing conducted in response to those complaints, high-failure rates and replacement part sales data, aggregate data from Harley-Davidson dealers, technical automotive publications criticizing the Engine design in the Motorcycles, and other sources of aggregate information about the problem.

81.     While Defendants have been fully aware of the Engine Defect in the Engines, they actively concealed the existence and nature of the Engine Defect from

Plaintiffs and the Class at the time of purchase, lease, repair, and thereafter.

82.     When consumers present the Motorcycles to authorized Harley-Davidson dealers complaining of the Engine Defects, consumers are typically told that the engines were operating normally and as intended.

83.     To this day, Defendants still have not notified Plaintiffs and Class members that the Motorcycles suffer from the Engine Defect that causes extreme heat and early wear on engine components.

84.     Plaintiffs and other Class members paid a significant premium of thousands of dollars for the alleged benefits of a Harley-Davidson product that would be able to be ridden in the form and configuration it was purchased.  Plaintiffs and other Class members reasonably did not expect they would need to make additional expenditures to use the Motorcycle in the reasonably intended way.

85.     As noted in the NHTSA complaints, to be ridden, consumers are required to purchase additional components.  Defendants do not disclose this requirement to consumers.

86.     As such, Defendants do not disclose the existence of the Engine Defect, or any of the safety risks discussed above.

87.     The existence of the Engine Defect is a fact that a reasonable consumer would consider material when deciding whether to purchase or lease a Motorcycle.

88.     Reasonable consumers, like Plaintiffs, expect and assume that a vehicle will be functional as it was sold, will function in a manner that will not pose a safety hazard and is free from defects.  Plaintiffs and Class members further expect and assume that Harley-Davidson will not manufacture or advertise for sale or lease vehicles with known defects, such as the Engine Defect, and will disclose any such defects to its consumers when they learn of them.  They do not expect Harley-Davidson to fail to disclose the Engine Defect to them or to continually deny the defect.

89.     Additionally, as a result of their reliance on Defendants' omissions,

owners and/or lessees of the Motorcycles suffered an ascertainable loss of money, property and/or value of their Motorcycles.

90.     As a result of the Engine Defect, Plaintiffs and other Class members were harmed and suffered actual damages.  Had Plaintiffs and other Class members known of the Engine Defect, they would not have purchased the Motorcycles, would have purchased a motorcycle from one of Defendants' competitors, or would have purchased a different model of Defendants' products, including one with a different engine, or would have paid less for the Motorcycle.

91.     Further, Plaintiffs and Class members were harmed because of the resulting premature diminution in value.

**F.     Plaintiff Michael Berke**

92.     Plaintiff Michael Berke purchased a 2015 Harley-Davidson Road Glide Special with a Twin Cam 103 engine for approximately $25,907.15 from the Antelope Valley Harley-Davidson dealership in Lancaster, California in September 2015.

93.     After purchasing his Harley-Davidson motorcycle, Plaintiff Berke noticed that his engine appeared to run excessively hot.

94.     During normal use of his Motorcycle, Plaintiff Berke has experienced intense heat from the rear cylinder of his Motorcycle's engine, heat produced by his Motorcycle's engine, exhaust and related systems.  Plaintiff Berke has further suffered economic injuries, including, but not limited to, the devaluation in value of his motorcycle due to the excessive heat.

95.     Plaintiff Berke has not received any notice or warning of the inherent defects in the Twin Cam 103 engine, or the safety risks of continued use of the product from Defendants.  At or before the time of purchase, Defendants failed to disclose to Plaintiff Berke the facts, described below, regarding the Twin Cam 103's inherent defects, risks, and safety hazards that is exclusively possessed but withheld, concealed, and failed to disclose to Plaintiff Berke and other members of the Class.  The facts concealed by Defendants were material.  Defendants had an ongoing duty throughout

COMPLAINT                                                                                              22

the Class Period, to disclose these facts to Plaintiff Berke and the Class.  Reasonable consumers, like Plaintiff Berke, would want to know about the Twin Cam 103's inherent defects, ongoing risks, and safety hazards.  Like other reasonable consumers, had Plaintiff Berke been provided all material facts regarding the Twin Cam 103's inherent  defects, risks, and safety hazards that Defendants exclusively possessed but omitted, withheld, and concealed from Plaintiff Berke and the Class, Plaintiff Berke would have been aware of the safety concerns present and acted differently, including, but not limited to not purchasing (or retaining) a product equipped with a Twin Cam 103 engine containing the latent Engine Defect described herein.

**G.     Plaintiff Wolfgang Costello**

96.     Plaintiff Wolfgang Costello purchased a 2013 Harley-Davidson Road Glide motorcycle with a Twin Cam 103 engine for approximately $26,380.29 from the Old Road Harley-Davidson dealership in Santa Clarita, California in May 2013.

97.     After purchasing his Harley-Davidson motorcycle, Plaintiff Costello noticed that his engine appeared to run excessively hot. The rear cylinder and exhaust system was hot enough to burn Plaintiff Costello's legs as they came in contact with it.

98.     Plaintiff Costello has suffered physical injuries including burns to his legs, as a result of the excessive heat produced by his Harley-Davidson motorcycle's engine, exhaust and related systems. Plaintiff Costello has further suffered economic injuries, including, but not limited to, the devaluation in value of his motorcycle due to the excessive heat.

99.     Plaintiff Costello has not received any notice or warning of the inherent defects in the Twin Cam 103 engine, or the safety risks of continued use of the product from Defendants.  At or before the time of purchase, Defendants failed to disclose to Plaintiff Costello the facts, described herein, regarding the Twin Cam 103's inherent defects, risks, and safety hazards that is exclusively possessed but withheld, concealed, and failed to disclose to Plaintiff Costello and other members of the Class.  The facts concealed by Defendants were material.  Defendants had an ongoing duty throughout

COMPLAINT                                                                                        23

the Class Period, to disclose these facts to Plaintiff Costello and the Class. Reasonable consumers, like Plaintiff Costello, would want to know about the Twin Cam 103's inherent defects, ongoing risks, and safety hazards. Like other reasonable consumers, had Plaintiff Costello been provided all material facts regarding the Twin Cam 103's inherent defects, risks, and safety hazards that Defendants exclusively possessed but omitted, withheld, and concealed from Plaintiff Costello and the Class, Plaintiff Costello would have been aware of the safety concerns present and acted differently, including, but not limited to not purchasing (or retaining) a product equipped with a Twin Cam 103 engine containing the latent Engine Defect described herein.

## CLASS ALLEGATIONS

100. Plaintiffs bring this action on behalf of themselves and as a class action pursuant to the provisions of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and seek to represent a class for alleged violations of the UCL initially defined as:

> All persons in California who, during the Class Period, purchased, owned, or leased a motorcycle with a Twin Cam 103 V-Twin Engine (the "Class").

101. Plaintiff Berke also seeks to represent a subclass for alleged violations of the CLRA defined as "All persons in California who, during the Class Period, purchased, owned, or leased a motorcycle with a Twin Cam 103 V-Twin Engine (the "Subclass"). The terms "Class" and "Subclass" are used interchangeably herein, and that the term Class is meant to include reference to the Subclass, except as otherwise stated or specified.

102. The "Class Period" dates back four years (or alternatively, the length of the longest applicable statute of limitations for any claim asserted on behalf of the Class) from the date this action was commenced and continues through the present and the date of judgment. Specifically excluded from the Class are: (a) any officers, directors, or employees of Defendants; (b) any judge assigned to hear this case (or spouse or immediate family member of any assigned judge); (c) any employee of the

Court; (d) any juror selected to hear this case; and (e) any attorneys of record and their employees.

103.   Plaintiffs reserve the right to modify, expand, or amend the above Class definition or seek certification of a class that is defined differently than above before any court determines whether certification is appropriate following discovery.

104.   *Numerosity*.  Members of the Class are so numerous that joinder of all members is impracticable.   While the number of Class members is unknown to Plaintiffs at this time, Plaintiffs are informed and believe that the Class numbers at least in the thousands.

105.   *Ascertainability*.  The community of interest among the Class members in the litigation is well defined and the proposed Class is ascertainable from objective criteria.  The identities of Class members can be obtained from Defendants' business records.  Class members can be notified of the pendency of Plaintiffs' Complaint by mail or published notice.  If necessary to preserve the case as a class action, the Court can redefine the Class and/or create subclasses.

106.   *Commonality and Predominance*.  There is a well-defined community of interest in the questions of law and fact affecting the parties to be represented in this action.  Common questions of law and fact that exist as to all members of the Class and predominate over any questions affecting only individual members, include, but are not limited to:

   a. Whether the Twin Cam 103 engine has defects that create an unreasonable risk of burns under normal use and within its expected useful lifespan;

   b. Whether Defendants knew or should have known of the defects in the Twin Cam 103 engine;

   c. Whether Defendants concealed the defects in the Twin Cam 103 engine;

   d. Whether Defendants had a duty to disclose material facts to the Class about the defects in the Twin Cam 103 engine;

   e. Whether Defendants' omissions regarding the defects in the Twin Cam

103 engine were likely to deceive Class members;

    f.  Whether Defendants engaged in unfair, unlawful, or fraudulent business practices in violation of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*);

    g.  Whether Defendants violated the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) by violating the Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*);

    h.  Whether Defendants' use of false or deceptive advertising constituted false advertising under California law;

    i.  Whether Defendants' conduct, as alleged herein, violated the Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*);

    j.  Whether Plaintiffs and Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, or other relief;

    k.  The amount and nature of such relief to be awarded to Plaintiffs and the Class; and

    l.  Whether any applicable statutes of limitations should be tolled due to Defendants' concealment of the defects in the Twin Cam 103 engine.

107.  *Typicality.*  Each Plaintiff is a member of the Class and their claims are typical of the claims of members of the Class.  Typical of members of the Class, Plaintiffs' Harley-Davidson motorcycles have Twin Cam 103 engines with a Engine Defect undisclosed and actively concealed by Defendants during the Class Period. Plaintiffs and Class members each sustained, and will continue to sustain, damages arising from Defendants' wrongful conduct, as alleged more fully herein. Plaintiffs' claims are founded on the same legal theories as those of the Class.

108.  *Adequacy of Representation.*  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the other Class members and because Plaintiffs have retained counsel competent and experienced in complex class action and consumer litigation, including substantial experience in the

types of claims alleged in this Complaint.  Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

109.  *Declaratory and Injunctive Relief.*  Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class.

110.  *Superiority of Class Adjudication.*  The certification of a class in this action is superior to the litigation of a multitude of cases by members of the Class. Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.  Moreover, there are Class members who are unlikely to join or bring an action due to, among other reasons, their reluctance to sue Defendants and/or their inability to afford a separate action.  Equity dictates that all persons who stand to benefit from the relief sought herein should be subject to the lawsuit and hence subject to an order spreading the costs of the litigation among the Class members in relation to the benefits received.  The damages, restitution, and other potential recovery for each individual member of the Class are modest, relative to the substantial burden and expense of individual prosecution of these claims.  Given the amount of the individual Class members' claims, few, if any, Class members could afford to seek legal redress individually for the wrongs complained of herein.  Individualized litigation presents a potential for inconsistent or contradictory judgments.   Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

111.  In the alternative, the above-referenced Class may be certified because:

a. The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members' claims which would establish

COMPLAINT                                                                                           27

incompatible standards of conduct for Defendants;

b.  The prosecution of separate actions by individual members of the Class would create a risk of adjudications which would as a practical matter be dispositive of the interests of other members of the class who are not parties to the adjudications, or which would substantially impair or impede the ability of other Class members to protect their interests; and,

c.  Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class.

## <u>COUNT I</u>

**(Violation of Unfair Competition Law,
Cal. Bus. & Prof. Code § 17200 *et seq.* – "Unfair" Prong)**

112.  Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

113.  Plaintiffs bring this action on behalf of themselves, on behalf of the Class, and on behalf of the general public pursuant to Section 17200 *et seq.* of the Business & Professions Code, the Unfair Competition Law ("UCL").

114.  The UCL prohibits unfair competition, which includes an "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200 *et seq.*  Defendants are persons within the meaning of Business and Professions Code Section 17201.

115.  A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

116.  Defendants committed, and continue to commit, "unfair" business acts or practices by, among other things:

a.  engaging in conduct for which the utility of the conduct, if any, is

COMPLAINT                                                                                          28

1    outweighed by the gravity of the consequences to Plaintiffs and
2    other members of the Class;

3    b.    engaging in conduct that is immoral, unethical, oppressive,
4    unscrupulous, or substantially injurious to Plaintiffs and other
5    members of the Class; and

6    c.    engaging in conduct that undermines or violates the spirit or intent
7    of the consumer protection laws that this Complaint invokes.

8    117.   Specifically, Defendants engaged in unfair business acts or practices in
9    violation of the UCL by designing, manufacturing, marketing, selling, and otherwise
10   placing into the stream of commerce the Motorcycles, which pose serious safety risks
11   to users of the Motorcycles and reduce the utility of the Motorcycles.  Defendants
12   further engaged in engaged in unfair business acts or practices in violation of the UCL
13   by failing to disclose and actively concealing the Engine Defect and the fact that (a) the
14   engine creates and emanates excessive heat, which can cause serious bodily injury, and
15   (b) the excessive heat causes premature wear of engine components.

16   118.   These acts and practices are unfair because they caused Plaintiffs and
17   other reasonable consumers to falsely belief that the Motorcycles were free from
18   defect, when in fact, Defendants knew that they contained a design defect.

19   119.   The gravity of harm to members of the Class resulting from these unfair
20   acts and practices outweighed any business justifications for Defendants' deceptive
21   acts and practices.  By committing the acts and practices alleged herein, Defendants
22   engaged in unfair business practices within the meaning of the UCL.  Such acts and
23   violations have not abated and will continue to occur unless enjoined.

24   120.   As a result of Defendants' unfair acts and practices, Plaintiffs, the Class,
25   and the general public have suffered injury in fact and have lost money or property.
26   These violations have unjustly enriched Defendants at the expense of Plaintiffs and the
27   Class.

28   121.   Under Section 17203 of the Business and Professions Code, Plaintiffs and

the other members of the Class are entitled to (a) an injunction ordering Defendants to cease engaging in any acts of unfair competition and to engage in a corrective advertising campaign in compliance with all applicable laws; (b) equitable relief; (c) pre- and post-judgment interest at the highest rate allowable by law; and (d) payment of attorneys' fees and costs pursuant to Section 1021.5 of the California Code of Civil Procedure.

## COUNT II

### (Violation of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* – "Fraudulent" Prong)

122. Plaintiffs incorporate all preceding and succeeding allegations by reference as if fully set forth herein.

123. Plaintiffs bring this action on behalf of themselves, on behalf of the Class, and on behalf of the general public pursuant to Section 17200 *et seq.* of the Business & Professions Code, the Unfair Competition Law ("UCL").

124. The UCL prohibits unfair competition, which includes an "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200 *et seq.* Defendants are persons within the meaning of Business and Professions Code Section 17201.

125. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

126. Defendants' business acts or practices of failing to disclose and actively concealing material information, as described herein, are fraudulent within the meaning of the UCL because they were likely to deceive and did deceive Plaintiffs and other members of the consuming public into believing that the Twin Cam 103 engines in the Motorcycles were free from defects creating excessive heat, when in fact the Twin Cam 103 engines were defective.

127. As a result, purchasers and lessees, including Plaintiffs, reasonably perceived and expected that the Motorcycles could be used as intended and would be

free from excessive heat.   This perception and expectation induced reasonable purchasers and lessees, including Plaintiffs, to purchase Motorcycles, which they otherwise would not have purchased or for which they would not have paid as much.

128.   Defendants have engaged in concealment designed to mislead Plaintiffs and all Class members into believing that the Motorcycles they owned were free of defects.  As a result of Defendants' concealment, Plaintiffs did not know, and could not know through the exercise of reasonably diligence be expected to know, of the Engine Defect and safety risks involved in their use of Defendants' products, or of Defendants' fraudulent conduct.

129.   Plaintiffs and other Class members relied on Defendants' omissions and conduct in failing to disclose material facts regarding the excessive heat, safety risks and premature component wear, and believed that they were receiving motorcycles that were free from any defects.

130.   As a result of Defendants' unfair acts and practices, Plaintiffs, the Class, and the general public have suffered injury in fact and have lost money or property. These violations have unjustly enriched Defendants at the expense of Plaintiffs and the Class.

131.   Under Section 17203 of the Business and Professions Code, Plaintiffs and the other members of the Class are entitled to (a) an injunction ordering Defendants to cease engaging in any acts of unfair competition and to engage in a corrective advertising campaign in compliance with all applicable laws; (b) equitable relief; (c) pre- and post-judgment interest at the highest rate allowable by law; and (d) payment of attorneys' fees and costs pursuant to Section 1021.5 of the California Code of Civil Procedure.

## COUNT III

**(Violation of Unfair Competition Law,
Cal. Bus. & Prof. Code § 17200 *et seq.* – "Unlawful" Prong)**

132.   Plaintiffs   incorporate   all   preceding   and   succeeding   allegations   by

reference as if fully set forth herein.

133.   Plaintiffs bring this action on behalf of themselves, on behalf of the Class, and on behalf of the general public pursuant to Section 17200 *et seq.* of the Business & Professions Code, the Unfair Competition Law ("UCL").

134.   The UCL prohibits unfair competition, which includes an "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200 *et seq.*   Defendants are persons within the meaning of Business and Professions Code Section 17201.

135.   A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

136.   Defendants committed, and continue to commit, unlawful business acts or practices by, among other things, violating California's Consumers Legal Remedies Act, Civil Code Section 1750 *et seq.*, as stated *infra*.

137.   As a result of Defendants' unfair acts and practices, Plaintiffs, the Class, and the general public have suffered injury in fact and have lost money or property. These violations have unjustly enriched Defendants at the expense of Plaintiffs and the Class.

138.   Under Section 17203 of the Business and Professions Code, Plaintiffs and the other members of the Class are entitled to (a) an injunction ordering Defendants to cease engaging in any acts of unfair competition and to engage in a corrective advertising campaign in compliance with all applicable laws; (b) equitable relief; (c) pre- and post-judgment interest at the highest rate allowable by law; and (d) payment of attorneys' fees and costs pursuant to Section 1021.5 of the California Code of Civil Procedure.

## **COUNT IV**
### **(Violation of Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*)**
### **(By Plaintiff Berke Only)**

139.   Plaintiffs   incorporate   all   preceding   and   succeeding   allegations   by

reference as if fully set forth herein.

140.   This Count is brought under the Consumers Legal Remedies Act, California Civil Code Section 1750 *et seq.* ("CLRA") by Plaintiff Berke only.

141.   Plaintiff Berke and each other Class member is a "consumer" within the meaning of California Civil Code Section 1761(d).

142.   Defendants are "person(s)" that sell "goods" to "consumers" within the meaning of Sections 1761(c), (a) and (d) of the California Civil Code.  Each individual purchase of a Motorcycle constitutes a separate "transaction" under Section 1761(e) of the California Civil Code.

143.   The Motorcycles are "goods" within the meaning of California Civil Code Section 1761(a).

144.   Defendants violated and continue to violate the CLRA by engaging in practices proscribed by California Civil Code Section 1770(a) in transactions with Plaintiff Berke and members of the Class, which were intended to result in, and did result in, the sale or lease of the Motorcycles.

145.   Section 1770(a)(5) of the Civil Code prohibits representing a good as having a characteristic that it does not possess.  Defendants marketed and sold the Motorcycles without disclosing the Engine Defect and the fact that (a) the engine creates and emanates excessive heat, which can cause serious bodily injury, and (b) the excessive heat causes premature wear of engine components.  By failing to disclose and concealing the defective nature of the Engine, Defendants violated Section 1770(a)(5) of the Civil Code.  Specifically, Defendants violated Section 1770(a)(5) of the Civil Code because Defendants omitted the existence of the Engine Defect.

146.   Defendants knew that the Twin Cam 103 suffered from an inherent defect, was defectively designed, had a substantial risk of causing serious injury, contained parts that would fail prematurely, and was not suitable for its intended use.

147.   Section 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if

they are of another."   By holding out the Twin Cam 103 as free from defect, Defendants violated Section 1770(a)(7).

148.   Section 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised".   By failing to disclose and concealing the defective nature of the Engine, thereby advertising the Motorcycles as free from defect, Defendants violated Section 1770(a)(9) of the Civil Code.

149.   Defendants have and continue to have a duty to disclose the Engine Defect because:

     a.   Defendants were in a superior position to know the true state of facts about the inherent safety defect in the Engine;

     b.   Defendants knew that the Engine Defect could foreseeably and adversely affect the use of motorcycles with Twin Cam 103 engines, transferring the cost of repairing or replacing the defective Twin Cam 103 to consumers.

150.   In failing to disclose the Engine Defect of the Twin Cam 103 engine, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

151.   The fact that the Twin Cam 103 creates extreme heat is material because no reasonable consumer expects that he or she will have to spend significant money for repairs or replacements in the early years of ownership due to premature component part wear and because Plaintiff Berke and members of the Class had a reasonable expectation that the Motorcycles would not suffer from excessive heat that would present a significant safety risk.

152.   As a result of Defendants' unlawful acts, Plaintiff Berke and members of the putative Class were exposed to safety risks and, have suffered, and will continue to suffer damages.   Pursuant to Section 1780(a)(2) of the Civil Code, Defendants should be enjoined from continuing to employ the unlawful methods, acts and practices alleged in this Complaint to prevent any future harm to Plaintiff Berke and the putative

Class.

153.   Plaintiff Berke, on behalf of himself and all others similarly situated, seeks equitable relief in the form of an Order prohibiting Defendants from engaging in the alleged misconduct described herein, as well as other relief, such as corrective advertising.

154.   Through counsel, Plaintiff Berke sent a notice and demand to Defendants on December 2, 2016, by first-class certified mail with return receipt requested pursuant to Civil Code Section 1782 requesting that Defendants correct, repair, replace or otherwise rectify the design defects.  When the time period within which Defendants may respond has elapsed, Plaintiffs will amend this Complaint to seek damages.  At this time, Plaintiffs seek only injunctive relief.

155.   Attached hereto is an affidavit in compliance with Civil Code section 1780(d).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class and Subclass, pray for relief as follows:

a.   Enjoining Defendants from all acts and practices in violation of the UCL, Business and Professions Code Section 17200 *et seq.* and the CLRA, California Civil Code Section 1750 *et seq.*, asserted herein;

b.   For an injunction ordering Defendants to repair or replace the Twin Cam 103 engines;

c.   For pre-judgment and post-judgment interest;

d.   For reasonable attorneys' fees and costs of suit; and

e.   For such other and further relief as this Court may deem just and proper.

\\\

\\\

\\\

\\\

COMPLAINT                                                                                                           35

## JURY TRIAL DEMANDED

Plaintiffs, individually and on behalf of the Class, hereby demand trial by jury of all claims and issues so triable.

Respectfully submitted,

ZIMMERMAN REED, LLP

Dated: December 2, 2016      By:    /s/ Christopher P. Ridout
Christopher P. Ridout
Hannah P. Belknap
2381 Rosecrans Ave., Suite 328
Manhattan Beach, CA 90245
Tel. (877) 500-8780
Fax. (877) 500-8781

Raymond P. Boucher
Shehnaz M. Bhujwala
BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, CA 91367
Tel. (818) 340-5400
Fax. (818) 340-5401

Gregory J. Owen
Susan A. Owen
Tamiko B. Herron
OWEN PATTERSON & OWEN, LLP
23822 West Valencia Blvd., Suite 303
Valencia, CA 91355
Tel. (661) 799-3899
Fax. (661) 799-2774

*Attorneys for Plaintiffs and all others similarly situated*

COMPLAINT      36

## AFFIDAVIT OF CHRISTOPHER P. RIDOUT

I, Christopher P. Ridout, declare as follows:

1.     I am an attorney with the law firm Zimmerman Reed, LLP and am one of the attorneys representing Plaintiff Wolfgang Costello and Plaintiff Michael Berke in this action.   This declaration is made pursuant to California Civil Code Section 1780(d).  I make this declaration based on my research of public records and also upon personal knowledge and, if called upon to do so, could and would testify competently thereto.

2.     Based on my research of public records and personal knowledge, Defendants Harley-Davidson Motor Company Group, LLC and Harley-Davidson Motor Company, Inc. conduct business within this Judicial District and this Judicial District is where a substantial number of the transactions giving rise to this complaint occurred.

I declare under penalty of perjury this 2nd day of December 2016 in Manhattan Beach, California, that the above and foregoing representations are true and correct to the best of my knowledge.

/s/ Christopher P. Ridout
Christopher P. Ridout

COMPLAINT                                                                                                              37